UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTERN WORLD INSURANCE COMPANY,

        Plaintiff,

  v.

BURT HOEY d/b/a JENNY'S MARKET, JENNIFER LAMBERS, and MARY ARMBRUSTER,

        Defendants.

Case No. 12-10220
Honorable Julian Abele Cook, Jr.

CONSOLIDATED

MARY ARMBRUSTER, JENNIFER HOEY LAMBERS and BURT HOEY, individually and d/b/a JENNY'S MARKET,

        Plaintiffs,

  v.

WESTERN WORLD INSURANCE COMPANY,
        Defendant.

Case No. 12-10630
Honorable Julian Abele Cook, Jr.

ORDER

    These two declaratory actions arise out of a civil lawsuit by Mary Armbruster who had become permanently paralyzed as the result of an accident in September 2011. Armbruster's fingers of claimed liabilities were thereafter pointed to Jennifer Hoey Lambers and Burt Hoey, both of whom were identified by her as (1) putative tortfeasors in the September 2011 accident, and (2) insured persons under the Western World Insurance Company ("Western World") umbrella policies. When this insurance carrier's policies facially appeared to cover the claimed liabilities of Lambers and Hoey, Western World filed a lawsuit in this Court, seeking to obtain a judicial

declaration that it did not have any legal obligation to assert a defense on behalf of Lambers and/or Hoey against Armbruster's allegations in the underlying lawsuit. On the same day, Armbruster, Lambers, and Hoey filed a similar lawsuit in the Washtenaw County Circuit Court of Michigan, with each of them seeking to obtain a judicial declaration that would impose a legal obligation upon Western World to undertake a legal defense in this case.

On February 13, 2012, Western World caused the state court action to be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441. Thereafter, these two actions were consolidated. Currently before the Court are the motions for summary judgment that have now been filed by Armbruster and Western World.

I.

In the fall of 2011, Mary Armbruster responded to an advertisement for a job that had been placed in a local newspaper by Hoey, who had sought to hire a person with experience with horses. This position, as advertised, required the successful applicant to handle the hay ride responsibilities on weekends. Armbruster was ultimately hired by Hoey, and trained to drive a hay wagon by another employee, who spent a day of instructing and watching her practice. In addition to conducting the hay rides, Armbruster was hired to run the pony rides and to help other employees in other areas of the enterprise, including picking pumpkins, cutting corn stalks, bagging apples, and labeling food jars. All necessary tools or equipment were provided by Hoey.

On September 24, 2011, Armbruster, while driving a hay ride wagon, became involved in an accident which caused her to sustain a permanently paralyzing spinal injury from the waist down.

At the time of the accident, Hoey had maintained a commercial general liability insurance policy that had been issued to him by Western World. This policy provided that Western World

2

would cover Hoey for any "bodily injury" damages for which he became legally obligated to pay. It also acknowledged a duty to defend him against any lawsuit arising out of those damages. However, the coverage was subject to the following exclusions; namely, (1) employee or volunteer worker bodily injury exclusion; (2) temporary worker bodily injury exclusion; and (3) independent contractor's exclusion. The employee or volunteer bodily injury exclusion states as follows:

This insurance does not apply to any claim:

(1) For "bodily injury" to any "employee" or "volunteer worker" of any insured arising out of and in the course of:

    a.    Employment by the insured; or
    b.    Performing duties related to the conduct of the insured's business....

The temporary worker bodily injury exclusion similarly states that the insurance policy does not apply to any claim arising out of bodily injury to a temporary worker. The independent contractor exclusion also states that the insurance does not apply to any claim arising out of the operation of an independent contractor.

Special definitions are included for the following relevant terms that are found within the language of the exclusions:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Employee" includes a "leased worker" and does not include a "temporary worker."

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload conditions.

3

After her accident, Armbruster filed a negligence action against Hoey and Lambers in Washtenaw County Circuit Court of Michigan. Soon thereafter, Armbruster, Hoey, and Lambers sought a declaration that Western World must provide indemnification, as well as a legal defense for them. On the same day, Western World filed a similar declaratory action in this Court, looking for a declaration that would determine that it is not obligated to provide indemnification or a defense in this litigation. Thereafter, Armbruster's previously filed state court declaratory action was consolidated into the action that is now pending before this Court.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate

if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

Although the Declaratory Judgment Act, 28 U.S.C. § 2201, permits a court to exercise jurisdiction over a request for declaratory judgment relief, jurisdiction is not automatic. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004). A court is permitted to decline jurisdiction "even [if the lawsuit] otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). In the context of insurance coverage diversity cases, the Sixth Circuit has declared that "declaratory judgment actions seeking an advance opinion

on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Bituminous*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). The potential danger of federal courts treading on states' efforts to regulate insurance companies has led the Sixth Circuit to "[hold] on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*, 495 F.3d 266, 273 (6th Cir. 2007).

In order to assist a district court in determining whether to exercise jurisdiction over a declaratory action, the Sixth Circuit has identified the following five factors for consideration:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

In addressing the first factor (i.e., whether a decision in the declaratory action will settle the controversy), the *Scottsdale* court indicated that "controversy" refers to the matter before the federal court regarding the insurer's obligation to provide indemnification. The decision by a federal court need not resolve the underlying dispute. In *Scottsdale*, the Sixth Circuit determined that this factor weighed in favor of federal jurisdiction where the plaintiff in the declaratory judgment action was

not a party to the state court action and neither the scope of the insurance coverage nor the obligation of the insurance company to defend was an issue before the state court. *Id.* at 556 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

The facts in the instant case closely match those of *Scottsdale*. A declaratory judgment will settle the controversy regarding the scope of Western World's coverage for Armbruster's claims. This issue could not be considered in the underlying state court action because Western World is not a party to that lawsuit. Moreover, the contested issue in this case is strictly a legal question of contract interpretation. The facts are undisputed. Thus, the Court will not have to delve into factual matters being developed in the state court proceedings. A decision by this Court would resolve all of the substantive controversies between Western World and the other parties.

The second factor for consideration is whether a judgment in the suggested declaratory action would clarify the legal relations at issue. This factor is "closely related to the first factor and is often considered in connection with it." *Id.* at 557. The *Scottsdale* Court indicated that the legal relationships at issue are those between the parties to the declaratory judgment, or, in other words, the extent of the indemnity obligation of the insurer. *Id.*

Here, the matter before the Court is the only case in which the obligation of Western World to indemnify Hoey and Lambers is at issue. A decision by this Court will undoubtedly clarify the legal relationships between the insurer and its insured.

The third factor for consideration is whether the declaratory judgment action is being used for procedural maneuvering or is likely to cause a race for res judicata. This factor is intended to preclude jurisdiction for declaratory plaintiffs who file lawsuits in an effort to achieve their choice of forum by filing first. *Id.* at 558. Courts are reluctant, however, to impute an improper motive to

a plaintiff if there is no evidence of one in the record. *Id.* A plaintiff in a declaratory judgment action which files its claim after state court litigation has begun is typically given the benefit of the doubt. *Id.* "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (quoting *Odom*, 799 F.2d at 250 n. 1).

Similar to the insurer in *Scottsdale*, Western World commenced this action after the state court action had begun and is not a party to the state court action. Here, too, the issue of insurance coverage is not before the state court. It appears that Western World's exercise of its right to select a federal forum was not designed to create a race for res judicata.

The fourth factor for consideration is whether an exercise of jurisdiction will increase the friction between federal and state courts. In order to determine whether this factor weighs in favor of or against jurisdiction, courts are urged to consider the following sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560.

The first sub-factor weighs in favor of jurisdiction. The resolution of the factual issues currently before the state court are not required to reach a decision in the declaratory judgment action. The issue before this Court is a question of contract interpretation that is not before the state court.

The second sub-factor does not weigh against jurisdiction. Typically, a state court is considered to be in a better position than a federal court to evaluate issues related to the interpretation of insurance contracts, but this sub-factor weighs less heavily in favor of the state court when the state law is clear and the state court is not considering the pending issues. *Id.* "When an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id*. In this case, Western World is not a party to the state court action and its obligation to defend is not before the state court.

The third sub-factor weighs in favor of declining jurisdiction. The Sixth Circuit has opined that state courts are (1) more familiar with issues of insurance contract interpretation and (2) better situated to identify and enforce relevant public policy considerations. *Id.* at 561. In this case, however, the distinction carries less force. The interpretation question at issue appears to be a relatively simple one that does not implicate broad policy considerations. Having considered all three sub-factors, the Court cannot say that this factor weighs against assuming jurisdiction.

The fifth and final factor is whether an alternative remedy is available. Possible alternative remedies include a declaratory judgment in state court or an indemnity action after the conclusion of the underlying state action. Michigan law does permit a declaratory judgment to be brought in state court. In this case, at least, such an action would appear to be preferable to a federal court decision as it would be decided by the same judge who presides over the underlying action. However, as noted by the *Scottsdale* court, where the issue is relatively straightforward and state law provides clear guidance, a federal court is not "a clearly inferior forum to resolve the issue." *Id.* at 562.

9

A review of the five *Grand Trunk* factors indicates that a majority of the factors weigh in favor of permitting jurisdiction, while none of these factors weighs heavily against such a decision. Thus, the exercise of federal jurisdiction of the declaratory judgment in this case is appropriate.

Having determined that jurisdiction is appropriate, the Court next turns to the merits of the parties' motions for summary judgment. The crux of the dispute is whether Armbruster's injuries are covered by the liability policy that had been issued to Hoey by Western World. Inasmuch as the dispute in this case centers around Western World's policy for bodily injury, the parties agree that the terms of the insurance contract exclude coverage for bodily injury to employees, temporary workers, and independent contractors. Armbruster contends that she does not fit any of these categories and therefore falls between the "cracks" of the exclusions and must be covered. Western World, on the other hand, maintains that these three categories are all inclusive, in that Armbruster must fit into one of them - and regardless of which one Armbruster fits, she is excluded from coverage.

Western World initially denied coverage to Armbruster because, in a letter dated January 12, 2012, it determined that she was a temporary seasonal employee.[1] (Def. Resp., Ex. C, ECF No. 19). The definition of "employee" in the policy simply states that it includes a "leased worker" but does not include a "temporary worker." No other parameters or definitions of the word are provided. A "leased worker" is defined as "a person leased to [the employer] by a labor leasing firm . . . to perform duties related to the conduct of [the employer's] business." A "temporary worker"

---

[1] Armbruster erroneously contends that Western World denied coverage because it determined that she was a temporary seasonal *worker*. The term "temporary worker" has a specific meaning within the terms of the policy and there is no evidence that Western World ever determined that Armbruster fit this definition.

is defined as "a person who is furnished to [the employer] to substitute for a permanent 'Employee' on leave or to meet seasonal or short term workload conditions."

The parties appear to agree that Armbruster was not a "leased worker" during any of the times that are relevant to this proceeding. Armbruster also contends that she also was not a "temporary worker" because she was not assigned to Hoey by some other party or an agency. The Court agrees. Armbruster does not appear to be a temporary worker under the policy's definition. Assuming that Armbruster was not a temporary worker, the Court must determine if she was an "employee" under the terms of the policy.

The word, "employee," is not expressly defined by the policy. The Michigan Court of Appeals has previously used the "economic-reality test" to determine if an individual was an "employee" for purposes of examining the scope of coverage of an insurance contract. *See Meridian Mut. Ins. Co. v. Wypij*, 573 N.W.2d 320, 322 (Mich. Ct. App. 1997). Typically, the test is used to distinguish an independent contractor from an employee, and although the parties appear to agree that Armbruster was not an independent contractor, this test nevertheless establishes a starting point for analyzing her relationship with Hoey.

The "economic reality test" consists of four factors; namely, (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal. *Id.* According to Armbruster's deposition, it was Hoey who (1) personally hired her, (2) paid her in cash for her work, (3) directed and controlled her work activities, and (4) had the authority to fire her. (Armbruster Dep. 235:17-239:18). Thus, it appears that she fits the common understanding of an employee, albeit a temporary one.

11

Armbruster contends that she can not be considered an "employee" because she was only hired to work for a total of eight weekends in September and October 2011. Thus, it is her belief that she must be considered, at best, to be a "temporary seasonal worker." This proposed new category is not listed in the policy. In fact, neither of the terms "seasonal" or "temporary seasonal worker" can be found anywhere in the contract. Armbruster seems to infer that the category of "employee" must include only those initially hired for a permanent or an indefinite term of employment. Nowhere in the contract is the definition so limited. As noted above, the definition of employee does exclude seasonal workers who are furnished to an employer by an external party; however, this definition does not exclude temporary or seasonal workers who are hired directly by the employer. Indeed Armbruster does not offer any evidence or legal support for her contention that the term "employee" should bear her proposed meaning. Her argument that she is not an employee under the terms of the policy because her employment was projected to be only for a limited duration is unpersuasive. Inasmuch as the policy excludes coverage for bodily injuries suffered by employees, Western World is not obligated to indemnify or provide a defense for Hoey or Lambers.

The second issue for which Western World seeks a declaratory judgment is whether Lambers qualifies for coverage or indemnification as an insured under the terms of the policy. As Armbruster's injuries are not covered by the terms of the policy, the issue of whether Lambers qualifies as a named insured is rendered moot.

IV.

For the reasons that have been set forth above, the Court grants Western World's motion for summary judgment (ECF No. 18) and denies Armbruster's cross-motion for summary judgment

(ECF No. 19).

IT IS SO ORDERED.

Date: September 25, 2013　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　　　　　　　　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 25, 2013.

　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　Case Manager

13